Stephen J. Nutting
Law Office of Stephen J. Nutting
6th Floor Marianas Business Plaza
P.O. Box 5093 Saipan, MP 96950

Michael Chen
Michael Chen Law Offices
7330 Edna Ave.
Las Vegas, NV 89117
*Pro Hac Vice*
*Attorneys for Plaintiffs IPI (CNMI) LLC,
Best Sunshine International Ltd.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| Imperial Pacific International (CNMI) LLC, Best Sunshine International Ltd.;<br><br>Plaintiffs,<br><br>Vs.<br><br>Commonwealth of the Northern Mariana Islands, Commonwealth Casino Commission, Edward C. Deleon Guerrero, Chairman of CCC, in his official and personal capacities; Rafael S. Demapan, Vice Chairman of CCC, in his official and personal capacities; Mariano Taitano, Commissioner of CCC, in his official and personal capacities; and Does 1-5, all inclusive;<br><br>Defendants. | Case No. 24-cv-00002<br><br>**FIRST AMENDED COMPLAINT FOR**<br><br>1. **UNCONSTITUTIONAL IMPAIRMENT OF CONTRACT AND VIOLATION OF THE CONTRACTS CLAUSE OF THE U.S AND CNMI CONSTITUTIONS;**<br>2. **VIOLATION OF THE TAKINGS CLAUSE OF THE U.S. CONSTITUTION ;**<br>3. **VIOLATION OF THE DUE PROCESS CLAUSES OF THE U.S. AND CNMI CONSTITUTIONS;**<br>4. **BREACH OF CASINO LICENSE AGREEMENT**<br>5. **DECLARATORY RELIEF, INJUNCTION AND RESTITTUION.**<br><br>**DEMAND FOR JURY TRIAL** |

1. Plaintiffs, Imperial Pacific International (CNMI), LLC; (hereinafter referred to as "IPI"), and Best Sunshine International Ltd., ("Best Sunshine") by and through its undersigned counsels, as and for its complaint against Commonwealth of the Northern Mariana Islands ("CNMI"), Commonwealth Casino Commission ("CCC"), Edward C. Deleon Guerrero, Chairman of CNMI Commonwealth Casino Commission  in his official and personal capacities; Rafael S. Demapan, Vice Chairman of CCC, in his official and personal capacities; Mariano Taitano, Commissioner of CCC, in his official and personal capacities; Defendants Does 1-5; alleges as follows:

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental), and 42 U.S.C. § 1983.

## VENUE

3. Venue is proper in the federal district court for the Northern Mariana Islands in that Defendants reside and do business in this District, including business related to the claims asserted herein, 28 U.S.C. Section 1391 (b) (1), the events on which the claims are based occurred in this District, 28 U.S.C. Section 1391(b) (2), and the property which is the subject of this action is located in this District, 28 U.S.C. Section 1391 (b) (2).

## IDENTIFICATION OF PARTIES

4. Plaintiff IPI is a limited liability company organized under the law of the Commonwealth of the Northern Mariana Islands, with its principal place of business at PMB 895 Box 10001, Saipan, 96950, Northern Mariana Islands. Its sole member is Best Sunshine International Ltd. (BVI). ("hereinafter referred to as "Best Sunshine").

5. Plaintiff Best Sunshine is a corporation organized under the law of the British Virgin Islands, with its principal place of business at P.O Box 957. Offshore Incorporation Centre, Road Town, Tortola, British Virgin Islands. Best Sunshine is a wholly owned subsidiary of Imperial Pacific International Holdings Ltd., a publicly traded company on the Hong Kong Stock Exchange and was incorporated under the laws of Hong Kong, China.

6. Defendant COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS ("CNMI") is a government entity lawfully created by the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America.

7. Defendant Commonwealth Casino Commission ("CCC") is the casino gaming regulatory agency of the Commonwealth of the Northern Mariana Islands ("CNMI") government that oversees and regulates the activities of the exclusive casino licensee operating in Saipan. CCC was established pursuant to 4 CMC Section 2313 under PL 18-56 on July 11, 2014.

8. Defendant Edward C. Deleon Guerrero ("Guerrero"), who is a United States citizen, residing in Saipan, CNMI. As of January 22, 2024, Defendant Guerrero is a commissioner and Chairman of CCC. Defendant Guerrero is being sued in his official and individual capacities.

9. Defendant Rafael S. Demapan ("Demapan"), who is a United States citizen, residing in Saipan, CNMI. As of January 22, 2024, Defendant Demapan is a commissioner and Vice Chairman of CCC. Defendant Demapan is being sued in his official and individual capacities.

10. Defendant Mariano Taitano ("Taitano"), who is a United States citizen, residing in Saipan, CNMI. As of January 22, 2024, Defendant Taitano is a commissioner of CCC. Defendant Taitano is being sued in his official and individual capacities.

11. The true names and capacities of Defendants Does 1 - 5, inclusive, are unknown to Plaintiffs, who therefore sues said Defendants by such fictitious names. Plaintiffs is informed and believes and thereon alleges that each defendant designated herein as a fictitiously named defendant is in some manner responsible for the events and happenings herein referred to, and caused the damage to the Plaintiffs as herein alleged. When Plaintiffs ascertains the true names and capacities of Does 1 -5, inclusive, it will ask leave of this Court to amend its Complaint by setting forth the same.

## FACTUAL ALLEGATIONS

12. In March 2014, the CNMI announced that it would hold a competitive bidding process for the first ever casino license to be issued by the CNMI. On July 8, 2014, the CNMI enacted Public Law 18-56 to allow for the issuance of an exclusive gaming license for the operation of a Casino in the Commonwealth.

13. The CNMI decided to issue such a license because it "was faced with significant economic challenges including a significant reduction of government revenues, unfunded government retirement obligations, reduction of the economy, and lack of economic opportunity for residents" and it determined that "the issuance of an exclusive casino license on the island of Saipan with specific development requires that are meant to provide immediate economic stimulus and long-term benefits to the community" was necessary to address the economic challenges facing the CNMI. **Exhibit A** (CLA). The CNMI's authority to issue the license derived from Public Law 18-56.

14. The CNMI looked abroad to solve its economic woes. It did so by "publicly solicit[ing] proposals from qualified proposers and establish[ing] a selection procedure that properly and carefully evaluate these proposals based on the promised benefits to the community[.]" **Exh. A**. Only two proposals were submitted, both by foreign companies.

15. The first proposal was submitted by Best Sunshine International Limited (BVI). As noted above Best Sunshine International Limited (BVI) ("Best Sunshine") is incorporated in the British Virginia Islands. It is wholly owned by Imperial Pacific International Holdings Ltd., a Chinese investment holding company listed on the Hong Kong stock exchange. The second proposal was submitted by Marianas Stars Entertainment, another Hong Kong based investment group.

16. Of the two proposals, the CNMI chose the proposal submitted by Best Sunshine as the proposal that best responded to the CNMI's needs and "[Best Sunshine] were chosen to be the licensee." **Exh. A**. The CNMI was aware that all of the funds for the development project would ultimately come from Imperial Pacific International Holdings Ltd. through Best Sunshine.

17. CNMI recognized that "the granting of a long-term exclusive casino license provide[d] an extremely valuable significant government benefit to [Best Sunshine]. **Exh. A**. Although CMNI chose Best Sunshine "to be the licensee," it determined that the license awarded to Best Sunshine should "be held by a Commonwealth entity and [] required Best Sunshine to form a domestic entity, [IPI], which shall be the designated licensee ("Licensee") and who shall assume all promises obligations and agreements previously made [by] Best Sunshine International Limited in this matter."

18. Accordingly, Best Sunshine formed IPI to enter into the CLA with CNMI. IPI, through one of its directors, Ms. Cai Ling Li, executed the CLA on August 12th 2014. The Lottery Commission executed the CLA for the CNMI. The Acting Attorney General of the CNMI, Mr. Gilbert Birnbrich, signed the CLA as well.

19. Paragraph 1 of the CLA expressly provided that "This License Agreement is intended to implement and supplement the terms of the Act." Paragraph 1 defined the "Act" as Public Law 18-56, which is the law that empowered the CNMI to issue a casino license. The CNMI and IPI made the Act a part of the CLA through inclusion of a copy of the Act as Attachment A. Section 7 of the Act empowers the CCC "to promulgate such rules and regulations ... to ensure the suitability and compliance with the . . . contractual obligations of owners, operators and employees of casinos."

20. In recognition of the fact that it was Best Sunshine and Imperial Pacific International Holdings Ltd. who ultimately stood behind this development project, the CNMI and IPI also included the "Casino License Application of Best Sunshine International Limited" as Attachment E to the CLA and the "Business Plan of Best Sunshine International Limited" as Attachment F to the CLA.

21. Paragraph 2 of the CLA provided that "[u]pon issuance of the Casino License the authority of the Lottery Commission over this License shall cease and the Office of the Governor shall have authority for enforcement of the terms and conditions of this License Agreement except for enforcement of the terms and conditions of this License Agreement except for the

elements specifically identified for control by the Casino Commission, as identified in section 3 below. **Exh. A**. Section 3 identifies the "Commonwealth Casino Commission" (or "CCC") as a commission established pursuant to the Act that "shall have authority for the approval of all casino operations and gaming activities conducted under the Casino License... The authority of the Casino Commission includes the ability to suspend or revoke the Casino License, in accordance with the requirements of the Commonwealth Administrative Procedure Act, for violation of the Rules." In essence, the CCC replaced the Lottery Commission as the government entity charged with authority over the License and the CLA as far as the gaming operation of the licensee is concerned.

22. Under CLA, among other obligations, IPI would pay a fifteen million dollars ($15,000.000.00) annual Casino License Fee. IPI dutifully paid the annual license fee each year between 2014 and 2019.

23. Under the CLA, "Licensee shall not be in default for any failure or delay in the performance due under this License Agreement if such failure or delay is due to [force majeure events]."

24. On December 4, 2015, CNMI promulgated Public Law 19-24, which imposes a new obligation on IPI to pay CCC an annual "Casino Regulatory Fee" of three million dollars ($3,000.000.00) on or before October 1 of each year beginning October 1, 2015 ("Regulatory Fee Statute"). That fee is due to CCC "regardless of the actual costs incurred by the [CCC]." 4 C.M.C. Section 2309 (a). IPI paid the Casino Regulatory Fee each year from 2015 through 2019.

25. Before Public Law 19-24 was signed by then Acting Governor, Ralph DLG. Torres, the CNMI legislature's statutory language provided for a "Nonrefundable Credit" to the $3M regulatory fee. The nonrefundable credit would allow IPI to apply the fees paid to CCC as a credit against taxes on general revenue as imposed by 4 C.MC. Section 1301. The Acting Governor vetoed the provision of "Nonrefundable Credit" with the stated reason that, "the cost of regulating casino gaming activities on Saipan are to be paid in full by the licensee." See **Exhibit B.**

26. Due to a number of force majeure events and suspension of the casino license by CCC, IPI has been unable to make the payment for the annual regulatory fee since October 1, 2020.

27. On or about October 6, 2020, Andrew Yeom, then executive director of CCC, brought a complaint 2020-005 before CCC.

28. On or about April 22, 2021, in response to Complaint 2020-005, Defendants Commissioners Guerrero, Demapan, Taitano, together with two former commissioners Mendiola, and Cruz, unanimously issued Commission Order 2021-002, which suspended IPI's exclusive casino license indefinitely due to the nonpayment of the regulatory fees.

29. Since April 22, 2021, till today, IPI's casino license was suspended. While its casino license being suspended, IPI may not and did not operate a casino.

30. On or about December 1, 2023, CCC issued a demand of $17,625,000.00 to be paid within 30 days related to the regulatory fees, as well as fines and penalties, as a prerequisite for IPI's license being restored and for IPI to resume its business in CNMI.

31. The computation of the $17,625,000.00 includes the annual regulatory fees that would be chargeable to IPI since April 22, 2021, as if IPI had an active unrestricted casino license the entire time.

## CONSTITUTIONAL AND STATUTORY GROUNDS

32. The Contracts Clause of the United States Constitution (U.S. Const. Art. I. Section 10, cl. 1) prohibits any state from passing a "law impairing the obligation of contracts."

33. Article 1, Section 1 of the CNMI Constitution likewise states that "[n]o law shall be made that is a bill of attainder, an ex post facto law, a law impairing the obligation of contracts…"

34. Under the Due Process and the Takings Clause of the Fifth Amendment to the U.S. Constitution, made applicable to the States by the Fourteenth Amendment (U.S. Const., Amends. V & XIV), "No person shall be… nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

35. Under the Due Process Clause of the Fourteenth Amendment to the U.S Constitution, the government shall not deprive any person of life, liberty or property, without due process of law, or deny to any person the equal protection of the laws.

36. Article 1, Section 5 of the CNMI Constitution likewise states that "[n]o person shall be deprived of life, liberty or property without due process of law."

37. In 1975, the United States and the CNMI entered into the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America ("Covenant"), providing that the CNMI would have Commonwealth status, the Covenant was signed into law by the U.S. Congress in 1976 and fully implemented in November 1986.

38. Under Section 501(a) of the Covenant, the Contracts Clause, the Takings Clause, and the Due Process Clause and Equal Protection Clause of the United States Constitution are applicable to the CNMI.

39. 42 U.S.C. § 1983 provides that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

### FIRST CAUSE OF ACTION

**(Against Defendants for Unconstitutional Impairment of CLA, in Violation of the Contracts Clause of the United States and CNMI Constitutions)**

40. Plaintiffs incorporates herein by this reference the allegations contained in the preceding paragraphs.

41. Plaintiffs hereby seeks declaratory, injunctive and equitable relief to prevent Defendants from violating and continuing to violate, the Contracts Clauses of the United States Constitution and CNMI Constitution.

42. CNMI and IPI had an existing contractual relationship that provides IPI with certain contractual and property rights to operate a casino in CNMI in exchange for substantial compensation to CNMI.

43. Acting under color of Commonwealth law, Defendants have caused IPI to suffer a substantial deprivation of its contract rights in violation of the federal and commonwealth constitutions. The Regulatory Fee Statute imposed additional fees for doing business in CNMI, which constitutes a substantial and unconstitutional impairment of the CLA. IPI was and is still required to pay the $3M annual regulatory fee as a prerequisite to exercising its existing contractual and property rights set forth explicitly in the CLA, rights for which it already has compensated CNMI. In essence, Defendants are double-charging IPI. The annual regulatory fees are substantial, and the impairment to the express and implied terms of the CLA is direct. The later imposed regulatory fees, Commission Order 2021-002, and the most recent demand for immediate payment by Defendants, effectively nullify the explicit terms of the CLA and impose completely unexpected and new liabilities and limitations on the operation of IPI.

44. The impairment to the CLA by imposing annual regulatory fee is substantial.

45. The annual regulatory fee statute, as applied to IPI during the Covid-19 period where its business was shut down with zero revenue for the sakes of public health and welfare, is an unconstitutional impairment of its contractual right under the force majeure clause within the CLA.

46. The application of the annual regulatory fee statute, without giving due consideration to an apparent and significant force majeure event and the force majeure clause in the CLA, is unconstitutional because it deprives IPI of a bargained for right: right to be free from default for any failure or delay in paying the fees in the event of force majeure.

47. The impairment to the CLA by demanding immediate payment for annual regulatory fee accrued during the force majeure event is substantial.

48. The recent demand of near $10M regulatory fee allegedly accrued during the period when IPI's casino license was suspended is unconstitutional impairment of the CLA because it

deprives IPI of a bargained for right: right to the casino license when its payments obligations were honored.

49. The impairment to the CLA by demanding near $10M regulatory fee accrued for the period when IPI's license was suspended is substantial.

50. IPI has incurred and will continue to incur attorney's fees and costs because of these proceedings, in amounts that cannot yet be ascertained, which are recoverable in this action under the provisions of 42 U.S.C. Section 1988 (b).

## SECOND CAUSE OF ACTION

## (42 U.S.C. §1983: Against Defendants for Violation of the Taking Clause of the United States Constitution)

51. Plaintiffs incorporates herein by this reference the allegations contained in the preceding paragraphs.

52. Plaintiffs hereby seeks declaratory, injunctive and equitable relief to prevent Defendants from violating and continuing to violate the Takings Clause in the Fifth Amendment to the United States Constitution, made applicable to CNMI through the Fourteenth Amendment, as well as the Section 501 (a) of the Covenant.

53. Defendants require IPI to pay excessive and unlawful fees pursuant to the later enacted Regulatory Fee Statute without formal condemnation, as a condition for IPI to operate its business under the CLA despite the CLA already expressly providing for an annual license fee and no such regulatory fee, even for the period when IPI was legally prohibited from operating the casino during the pandemic and when its license was suspended.

54. By the enactment and implementation of the regulatory fee statute, the issuance of Commission Order 2021-002, Defendants are thereby permanently, directly and substantially interfering with IPI's use and enjoyment of its contractual and property rights (the casino license), amounting to an unauthorized taking of its casino license without just compensation.

55. Further, the recent near $10M demand by Defendants upon IPI to pay the annual regulatory fees allegedly accrued during the period when IPI's casino license was suspended

since April 22, 2021, by Defendants is an unconstitutional taking without just compensation. IPI was deprived of the property (regulatory fees) without just compensation in the form of an active casino license.

56. IPI has incurred and will continue to incur attorney's fees and costs because of these proceedings, in amounts that cannot yet be ascertained, which are recoverable in this action under the provisions of 42 U.S.C. Section 1988 (b).

## THIRD CAUSE OF ACTION

**(42 U.S.C. §1983: Against Defendants for Violation of the Due Process Clauses of the United States and CNMI Constitutions)**

57. Plaintiffs incorporates herein by this reference the allegations contained in the preceding paragraphs.

58. Plaintiffs hereby seeks declaratory, injunctive and equitable relief to prevent Defendants from violating and continuing to violate the Due Process Clauses in the Fourteenth Amendment to the United States Constitution, made applicable to CNMI by the Section 501 (a) of the Covenant.

59. Plaintiffs hereby seeks declaratory, injunctive and equitable relief to prevent Defendants from violating and continuing to violate the Due Process Clauses in the CNMI Constitution.

60. Acting under color of law, by the enactment and implementation of the regulatory fee statute, the issuance of Commission Order 2021-002, and the most recent demand for immediate payment by Defendants, Defendants have caused IPI to suffer a deprivation of its federal and commonwealth constitutional rights. Defendants require IPI to pay excessive and unlawful fees pursuant to the later enacted Regulatory Fee Statute without due process of law in violation of Section 1 of the Fourteenth Amendment, as a condition for IPI to operate its business under the CLA.

61. Acting under color of law, Defendants have caused IPI to suffer a deprivation of its federal and commonwealth constitutional rights. CCC requires IPI alone to pay excessive and

unlawful fees pursuant to the later enacted Regulatory Fee Statute, which violates the Due Process Clause of CNMI Constitution.

62. The actions of Defendants in enacting and implementing the annual regulatory fee statute, and the issuance of Commission Order 2021-002, were arbitrary, capricious and unreasonable in the following respects, among others:

a) The annual regulatory fees have the effect of circumventing the clear and unambiguous terms of the CLA, which provides for the payment of a specified business license fee as compensation for the right and privilege obtained by IPI for operating a casino in CNMI;

b) The annual regulatory fee imposed by CNMI and as implemented by Defendants, by its own explicit language, bears no reasonable relationship to the true costs of regulating the casino industry;

c) The annual regulatory fees imposed by CNMI and as implemented by Defendants, consistently exceeded the actual costs of the operation of CCC. See **Exhibit C;**

d) Defendants have significant, direct, and personal pecuniary interests in enforcing the regulatory fees statute against IPI.

63. The recent demand by Defendants upon IPI to pay for over $6M regulatory fees allegedly accrued during the force majeure period by Defendant is arbitrary, capricious and unreasonable.

64. The recent demand by Defendants upon IPI to pay for the near $10M regulatory fees allegedly accrued during the period after IPI's casino license was suspended (since April 22, 2021) by Defendant is arbitrary, capricious and unreasonable.

65. IPI has incurred and will continue to incur attorney's fees and costs because of these proceedings, in amounts that cannot yet be ascertained, which are recoverable in this action under the provisions of 42 U.S.C. Section 1988 (b).

## FOURTH CAUSE OF ACTIONS
### (Against Defendants for Breach of Casino License Agreement)

66. Plaintiffs incorporates herein by this reference the allegations contained in the preceding paragraphs.

67. Plaintiffs hereby requests declaratory, injunctive and equitable relief pursuant to 28 U.S.C. Section 2201 and Rule 57 of the Federal Rules of Civil Procedure.

68. Actual controversies have arisen between IPI and Defendants with regard to whether the annual regulatory fee imposed by Defendants as a prerequisite for IPI to operate its business violate the terms of the CLA.

69. The enactment and implementation of the regulatory fee statute, the issuance of Commission Order 2021-002, and the most recent demand for immediate payment by Defendants, including over $6M regulatory fees accrued during the force majeure event, and near $10M regulatory fees allegedly accrued during the period when IPI's casino license was suspended by Defendants, constitute a breach of the CLA and an improper unilateral modification of the CLA.

70. IPI seeks declaratory relief and a judicial determination, pursuant to 28 U.S.C. Section 2201 and Rule 57 of the Federal Rules of Civil Procedure:

(a). that the imposition of the annual regulatory fee is in contravention of the CLA;

(b). that the IPI is either exempt from or not subject to the annual regulatory fee because of the pre-existing agreement with CNMI;

(c). that the annual regulatory fee statute as applied to IPI is unconstitutional;

(d). the demand for immediate payment of over $6M regulatory fee accrued during the force majeure event is a breach of the CLA force majeure clause and unconstitutional;

(e). the demand for near $10M regulatory fee allegedly accrued when IPI's license was suspended by Defendants is a breach of the CLA and unconstitutional.

(f). that Defendants are prohibited from enforcing the annual regulatory fee statute against IPI, or mandating Defendants exempt IPI from the annual regulatory fee, given the terms of the CLA and applicable federal and Commonwealth constitutional laws.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, as follows:

1. For the Court to issue a declaration stating that IPI is exempt or excepted from, or not subject to the terms of the Regulatory Fee because of the express terms of the CLA entered into by IPI and CNMI prior to the enactment of the annual regulatory fees statute;
2. For the Court to issue an injunction against Defendants preventing the enforcement of the Regulatory Fee Statute and collection of the annual regulatory fee against IPI, or mandating that Defendants exempt or except IPI from the annual regulatory fee, given the express terms of the CLA entered into by IPI and CNMI prior to the enactment of the annual regulatory fee statute;
3. For the Court to issue a declaration stating that the Regulatory Fee Statute, as applied to IPI, is unconstitutional;
4. For the Court to order Defendants to pay restitution of all regulatory fees paid by IPI in the past;
5. For the Court to order Defendants to vacate, nullify any and all adverse administrative decisions against IPI that were based upon the annual Regulatory Fee Statute, including the imposition of fees, interests and penalties for failure to pay the annual regulatory fees; as well as the suspension of its license based upon the annual regulatory fee statute. Including but not limited to Commission Order 2021-002;
6. For the Court to declare that IPI is not obligated to make the annual regulatory fee payment during the period when its casino license was suspended;
7. For all costs of suit incurred herein;
8. For reasonable attorney's fees incurred herein;
9. For such other and further relief as the Court may deem just and proper.

Dated: May 8, 2024
Saipan, CNMI

Respectfully submitted,

By: /s/ Stephen J. Nutting

Stephen J. Nutting
Law Office of Stephen J. Nutting
6th Floor Marianas Business Plaza
P.O. Box 5093 Saipan, MP 96950

Michael Chen
By: /s/ Michael Chen
Michael Chen Law Offices
7330 Edna Ave.
Las Vegas, NV 89117
*Pro Hac Vice*

Attorneys for Plaintiffs
IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC