# COMMONWEALTH'S EXHIBIT

# 2



In the

# Supreme Court

of the

# Commonwealth of the Northern Mariana Islands

---

**Edward L.G. Lizama, as Personal Representative of the Estate of Jesus T. Lizama, et. al.,**
*Plaintiff-Appellants*,

*v.*

**ANZ Guam, Inc., fka Citizens Security Bank (Guam) Inc., and Does,**
*Defendant-Appellees.*

**Supreme Court No. 2019-SCC-0007-CIV**

---

## OPINION

**Cite as: 2020 MP 17**

Decided July 17, 2020

_____

Chief Justice Alexandro C. Castro
Associate Justice John A. Manglona
Associate Justice Perry B. Inos

_____

Superior Court Civil Case No. 18-0372
Associate Judge Joseph N. Camacho, Presiding

_____

*Lizama v. ANZ Guam, Inc.*, 2020 MP 17

MANGLOÑA, J.:

¶ 1        Plaintiff-Appellants Edward L.G. Lizama, as Personal Representative for the Estate of Jesus T. Lizama, et al. ("the Lizamas"), appeal the Superior Court's Order Granting Motion to Dismiss ("Order"). They argue the court erred in: (1) dismissing the case under the doctrine of issue preclusion; (2) holding Defendant-Appellants ANZ Guam, Inc. and Does 1 to 5 ("ANZ") did not engage in banking business when it made the loan, secured the loan with a mortgage, and foreclosed on the mortgage; and (3) dismissing the Consumer Protection Act and Commonwealth Debt Collection Act claims without leave to amend the complaint. For the reasons below, we AFFIRM the Order.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2        In 1997, the Lizamas and ANZ entered into a construction loan agreement and mortgage, partially guaranteed by the United States Department of Agriculture ("USDA"), to construct a hotel. When the hotel construction was completed in 1999, the construction loan agreement was converted to a business loan agreement, along with a promissory note for the increase in the loan amount, and a modification to the mortgage. These documents, signed in Guam, provide that Guam law governs. After the Lizamas defaulted on the loan a year later, ANZ filed for foreclosure in the NMI Superior Court, which later entered default judgment. ANZ moved for foreclosure when the Lizamas failed to pay the judgment. The Lizamas opposed the motion, alleging the mortgage failed to comply with NMI real estate law. The court ordered a foreclosure sale for the unpaid loan amount. The Lizamas appealed the order directing the foreclosure sale. We dismissed the appeal for lack of jurisdiction. On remand, ANZ scheduled a foreclosure sale.

¶ 3        Before the scheduled sale, the Lizamas filed suit against ANZ in the United States District Court for the Northern Mariana Islands. There, they alleged a federal cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and nine NMI law causes of action, including a violation of the Commonwealth Consumer Protection Act ("CPA"), wrongful foreclosure under the Commonwealth Debt Collection Act ("DCA"), and breach of contract. In support of these claims, they alleged ANZ and its predecessor failed to obtain an NMI full-service banking license before executing the mortgage and seeking foreclosure on the real properties, and that such a license was required for these activities under Article XII, Section 2 of the NMI Constitution. The Lizamas also alleged ANZ misrepresented and concealed the USDA loan guarantee and pursued loan payments from them despite receiving USDA's guarantee payment.

¶ 4        ANZ moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b). The District Court granted the motion with prejudice because the complaint failed to allege sufficient facts to support a RICO claim. It held ANZ did not need an NMI full-service banking license to execute or foreclose on the mortgage and found ANZ did have a license when it tried to foreclose. Further, it found the language of Article XII, Section 2 did not require

ANZ to have a license, ANZ is not an NMI full-service bank, and ANZ did not acquire long-term interests in property when seeking judicial foreclosure. Finally, the District Court found the USDA loan guarantee did not impact the Lizamas' obligations under the loan agreement. Failing to find sufficient allegations for a RICO claim, the District Court declined to exercise supplemental jurisdiction over the NMI law claims. It determined that any amendment to the complaint would be futile. The Lizamas appealed the District Court's order and judgment to the United States Court of Appeals for the Ninth Circuit, which affirmed the dismissal.

¶ 5     ANZ rescheduled the foreclosure sale but did not accept any of the bids at the sale. The Lizamas then filed suit in the NMI Superior Court, once again alleging a violation of the CPA, wrongful foreclosure under the DCA, and breach of contract. They based their allegations on ANZ's alleged failure to (1) comply with NMI licensing laws, (2) be an NMI full-service bank under Article XII, Section 2 of the NMI Constitution, and (3) disclose the USDA guarantee while continuing to seek payment. The court held the claims were barred by the doctrine of issue preclusion and warranted dismissal under Commonwealth Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state claims for which relief could be granted.

¶ 6     The Lizamas appeal the Order.

## II. JURISDICTION

¶ 7     The Supreme Court has jurisdiction over final judgments and orders of the Commonwealth Superior Court. NMI CONST. art. IV, § 3.

## III. STANDARDS OF REVIEW

¶ 8     We review de novo the court's dismissal under Rule 12(b)(6). *Syed v. Mobil Oil Marianas Islands, Inc.*, 2012 MP 20 ¶ 9. We review the application of issue preclusion de novo. *In Re Estate of Camacho*, 4 NMI 22, 23 (1993). Because we find the issues were precluded, we do not consider the licensing arguments. We review the dismissals of the CPA and DCA claims without leave to amend for an abuse of discretion. *Syed*, 2012 MP 20 ¶¶ 9, 49.

## IV. DISCUSSION
### A.  Issue Preclusion

¶ 9     The Lizamas are silent as to the Superior Court's application of issue preclusion factors and argue instead that it should have applied principles of fairness and equity and some of the exceptions to issue preclusion in the Restatement (Second) of Judgments § 28 ("Section 28"). They argue Article XII Section 2 of the NMI Constitution required a "thoughtful and reasoned" review under Section 28 exception (5) to provide clarity for future litigants interacting with non-NMI financial institutions. The Lizamas assert the issues are also excepted under either Section 28 exception (2) or (3) due to the District Court's failure to mention a prior NMI case that might support their position the Article XII issue could still be decided by an NMI court. We examine whether the issues

should have been precluded, and if so, whether any exception to preclusion applies.

¶ 10    Issue preclusion, or collateral estoppel, "refers to the effect of a judgment in foreclosing relitigation of a matter that has been already litigated and decided."[1] *Rosario v. Camacho*, 2001 MP 3 ¶ 62. It requires "the issue in the previous action be identical to the one raised in the pending action," actually litigated, necessarily decided, and final and on the merits. *Id.*; *Villanueva v. City Trust Bank*, 2002 MP 1 ¶ 21 (citing *In re Roussos*, 251 B.R. 86, 92 (9th Cir. 2000)). Further, "the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." *Villanueva*, 2002 MP 1 ¶ 21. An "issue" subject to preclusion may be one of "evidentiary fact, of ultimate fact (i.e., the application of law to fact), or of law." RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt c. The issues in this case involve whether NMI law required ANZ to have a banking license to execute and foreclose on the mortgage, whether Article XII, Section 2 required ANZ to be licensed and barred ANZ from acquiring an interest, and whether ANZ needed to disclose the USDA loan guarantee. Each is a question of fact, law, or application of law to fact and therefore an issue subject to preclusion analysis.

¶ 11    The first three elements are in question, and we find they weigh in favor of issue preclusion. As to the first element—that the issues must be identical— the United States Supreme Court has held that when trademark usages adjudicated in federal and trademark board actions are materially the same, those issues are identical for purposes of issue preclusion. *B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 160 (2015). Here, the Lizamas presented the District Court and the NMI trial court with nearly verbatim allegations in their complaints: that ANZ needed an NMI full-service banking license, that its status as a non-NMI bank and ability to purchase ran afoul of the Article XII, Section 2, and that ANZ should have disclosed the USDA guarantee and halted efforts to seek payment from them. *Lizama v. ANZ Guam, Inc.*, 1:16-CV-00010, 2017 WL 3446493, at *2, (D. N. Mar. I. Jan. 23, 2017); *Lizama v. ANZ Guam, Inc.*, Civil Action No. 18-0372 at 2 (NMI Super. Ct. July 10, 2019) (Order Granting Motion to Dismiss). These issues are materially similar, or identical, satisfying the first element of issue preclusion.

¶ 12    The second element—whether the issue was actually litigated in a former proceeding—is also met. "The inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined." *Cromwell v. County of Sac*, 94 U.S. 351, 353 (1876). For an issue to be "actually litigated" it must have been "raised,

---

[1]    This is distinct from another res judicata concept—claim preclusion, which forecloses litigation of claims that were previously litigated, or have not been litigated but should have been raised in an earlier suit. *Id.*; *Taman v. Marianas Pub. Land Corp.*, 4 NMI 287, 290–91 (1995); *Santos v. Santos*, 4 NMI 206, 209 (1994); *In Re Estate of Camacho*, 4 NMI 22, 25 (1992); *Sablan v. Iginoef*, 1 NMI 190, 200–201 (1990).

*Lizama v. ANZ Guam, Inc.*, 2020 MP 17

contested, and submitted for determination" in the prior proceeding. *Janjua v. Neufeld*, 933 F.3d 1061, 1065–67 (9th Cir. 2019); *see Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 553 (9th Cir. 2003). Here, the Lizamas raised and submitted for determination the same three allegations in their complaints in the District Court and the Superior Court.[2] *Lizama*, 2017 WL 3446493 (Complaint at 3–5); *Lizama*, Civil Action No. 18-0372 (NMI Super. Ct. Aug. 22, 2018) (Complaint at 3–5). The second element is therefore met.

¶ 13      The third element—that the issue be necessarily decided—requires "only that the issue not have been 'entirely unnecessary' to the judgment in the initial proceeding." *Cook v. Harding*, 879 F.3d 1035, 1042 (9th Cir. 2018) (citing *Lucido v. Superior Court*, 795 P.2d 1223, 1226 (Cal. 1990)). Here, the District Court necessarily decided the issues by analyzing and ruling on whether the factual allegations could form a basis for the RICO claim. *Lizama*, 2017 WL

---

[2]    The complaint in the District Court action included the following allegations:

> ANZ and its predecessor, CSB, never obtained a full service banking license in the CNMI; when it executed the mortgage, and when it sought to foreclose Jesus' properties, in 2000, ANZ knew that it was not a duly licensed full service bank in the CNMI.

> Plaintiffs allege that only full service operating banks in the CNMI could mortgage and foreclose fee simple interest in lands situated in the CNMI as provided under the exception to Article XII, Section 2, of the CNMI Constitution.

> ANZ mortgaged and pursued foreclosure proceedings in the courts of the CNMI with no legal status to operate like other full service banks qualified to hold fee simple title in CNMI real properties as provided by law.

> Plaintiffs allege that the United States Department of Agriculture ("USDA") is an Administrative Agency of the United States ("U.S.") Federal Government and is the Guarantor of the ANZ mortgage agreement with Plaintiffs to the extent of the seventy percent (70%) of the loan . . .

> On information and belief, after Plaintiffs were defaulted on the loan, USDA, as Guarantor, paid ANZ its seventy percent (70%) guaranteed obligation.

> Notwithstanding the payment by USDA, ANZ continued to force Plaintiffs to pay the entire debt as if USDA's payment never happened.

> No disclosure of the USDA payment to Plaintiffs was ever made by ANZ; no disclosure of the payment to Plaintiffs was ever made likewise by USDA.

*Lizama v. ANZ Guam, Inc.*, Civil Action No. 18-0372 (NMI Super. Ct. Aug. 22, 2018) (Complaint at 3–5). The Lizamas later alleged identical allegations in the complaint filed in the subsequent Superior Court action. *Lizama*, 2017 WL 3446493 (Complaint at 3–5).

*Lizama v. ANZ Guam, Inc.*, 2020 MP 17

3446493, at *10–18. First, it analyzed NMI banking laws, including the definitions of "bank" and "banking business" under 4 CMC §§ 6103(b) and (c).[3] The District Court found "banking business" did not include foreclosing on mortgages on NMI real property and that the loans were not executed in the NMI. It also found the making and execution of a secured loan, the mortgage, occurred in Guam and, therefore, did not require a banking license under 4 CMC § 4221(a).[4] Thus, because ANZ was not engaged in banking business, a banking license was not required. The District Court thus necessarily decided this issue.

¶ 14    Whether Article XII, Section 2 of the NMI Constitution[5] required ANZ to have a banking license was also necessarily decided. The District Court analyzed the text of Section 2 and the Analysis of the Commonwealth Constitution, finding that it did not require an NMI banking license, that ANZ did have an NMI banking license, and seeking a judicial foreclosure was not an acquisition of property under Section 2. It concluded Article XII, Section 2 did not require ANZ

---

[3]    These statutes read:

> (b) "Bank" means any person doing a banking business, whether subject to the laws of the Commonwealth or the laws of any other jurisdiction. Bank includes offshore, retail, state, national, foreign, Micronesian and Commonwealth banks but does not include the Development Bank of the Commonwealth government.

> (c) "Banking business" means engaging for profit, but not on an occasional, incidental or fiduciary basis, in the activity of accepting deposits, making secured or unsecured loans, extending credit on the credit of the extender, issuing credit instruments, purchasing and selling credit instruments, commercial paper, securities, coin, currency, and bullion, and generally dealing in finance on behalf of the business or of others, singularly or in conjunction with other financial institutions. Banking business does not include limited purpose brokers in money, security or credit, factors, and numismatic dealers . . . .

[4]    The statute states "[n]o person may operate a bank or engage in banking business from within the Commonwealth, whether or not the business is carried on in the Commonwealth, without having been issued the licenses required by this division."

[5]    Article XII, Section 2 reads:

> A transfer to a mortgagee by means of a foreclosure on a mortgage is not an acquisition under this section if the mortgagee is a full service bank, Federal Agency or Governmental entity of the Commonwealth and does not hold the permanent or long-term interest in real property for more than ten years beyond the term of the mortgage. NMI CONST. art. XII, § 2.

to be an NMI bank or have a banking license to foreclose on the property, thus necessarily deciding there was no Article XII violation.[6]

¶ 15    Finally, the District Court necessarily decided the third allegation, that ANZ misrepresented and concealed the USDA guarantee while pursuing payments from the Lizamas. The District Court analyzed federal regulations describing the mechanics of the USDA loan guarantee and found nothing in the regulations altered the Lizamas' payment obligations to ANZ upon the USDA's payment to ANZ. Because the District Court analyzed and necessarily decided all three allegations, we hold issue preclusion barred relitigation in the NMI trial court, unless an exception applies.

### B.  Exceptions to Issue Preclusion

¶ 16    The Lizamas argue that exceptions to issue preclusion should apply for policy or equity reasons. Those exceptions include: (1) the determination's potential adverse impact on the public interest or interested persons who were not parties in the initial action, RESTATEMENT (SECOND) OF JUDGMENTS § 28(5)(a); (2) that the issue is one of law and a new determination is needed to account for an intervening change in law in the relevant legal context or to avoid inequitable administration of the laws, § 28(2)(b); and (3) when a new determination is needed due to differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them. § 28(3).

¶ 17    Restatement Section 28 exception (2)(b)—that a new determination is warranted to avoid inequitable administration of the laws—typically requires that the party had a full and fair opportunity to litigate the issue before another court in a previous action. *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1238–39 (3d Cir. 1995). The Lizamas make this argument because they believe the District Court and the Superior Court should have considered *LPP Mortgage, Ltd. v. Sablan*, Civil Action No. 03-0343C (NMI Super. Ct. June 15, 2004). There, the Superior Court held a foreclosure does not in itself confer to a mortgagee a long-term interest in property. Here, the District Court analyzed Article XII, Section 2 and its application to the instant case and concluded it did

---

6    Where a party files both federal and state law claims in federal court, the federal court "must ascertain and apply state substantive law." *Kabir v. CNMI PSS*, 2009 MP 19 ¶ 7 n.3. "Where the relevant state law is clear, the process is not particularly problematic." *Id.* Where there is no state law on the issue, "a federal court must predict how the state's highest court would interpret the statute . . . by looking to all available data." *Germain v. Teva Pharms., USA, Inc. (In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.)*, 756 F.3d 917, 937 (6th Cir. 2014). Here, because there no NMI cases interpreted the Article XII, Section 2 exception, the federal court looked to the plain language of the NMI Constitution and the Analysis to predict how NMI courts would interpret the law. The issue and law were straightforward and not so complex as to require certification to this Court. However, more complex issues may require certification from federal courts in future cases. *See Kabir*, 2009 MP 19 ¶ 7 n.3.

not apply. In doing so, it found ANZ did not need to be an NMI bank to foreclose and sought only a judicial foreclosure, not an acquisition of property within the meaning of this section. Such analysis barred any further examination of the issue. The Lizamas had the opportunity to bring this case to the courts' attention if they felt it would impact the case. The Superior Court did not inequitably administer the law in declining to make a new determination so this exception does not apply.

¶ 18    The Lizamas allege Section 28 exception (3) should have been applied because they assert the District Court's dismissal of the NMI law claims meant it thought they would be better filed in NMI court. Section 28 exception (3) excepts an issue from preclusion because a new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts. But the District Court dismissed the NMI claims because it lacked supplemental jurisdiction after analyzing and ruling on the allegations under the RICO claim, which involved interpreting NMI law. The Superior Court would have similarly analyzed those same allegations under NMI law. In other words, the Superior Court would have applied the same quality and extensiveness of analysis the District Court applied. The argument under this exception therefore fails.

¶ 19    The Lizamas likewise fail to explain the adverse impact on the public interest or parties outside the action that would result from this determination, other than to conclude that such an impact would occur. The same can be said of the arguments for Section 28 exception (5), regarding a lack of full and equitable adjudication of the issues. To the contrary, the District Court analyzed the allegations supporting their claims. *Lizama*, 2017 WL 3446493, at *13–14. The Superior Court did not err in failing to apply any of the Section 28 exceptions.

¶ 20    We hold the trial court properly found the issues precluded, so we do not address the arguments concerning licensing. We next evaluate whether the Lizamas satisfied the standards in seeking leave to amend.

### C.  Leave to Amend

¶ 21    The Lizamas argue dismissal of their complaint without leave to amend the CPA and DCA claims with the specific statutory sections was improper. The arguments are premised on ANZ's alleged failure to possess a valid license and file annual reports while executing and foreclosing on the mortgage.

¶ 22    Commonwealth Rule of Civil Procedure 15 allows amendments "as a matter of course," COM. R. CIV. P. 15(a), with the opposing party's consent or the court's written leave. COM. R. CIV. P. 15(a)(2). If the plaintiffs do not seek leave to amend through any of the above avenues, the court does not abuse its discretion by not granting leave to amend sua sponte, and "we will not remand this matter to seek leave of court to amend." *In the Adoption of Magofna*, 1 NMI 449, 455–56 (1990). Further, leave to amend can been sought *even after the order of dismissal*. *Id.* ("A dismissal under rule 12(b)(6) is not final or on the merits and the court normally will give plaintiff leave to file an amended complaint."

*Lizama v. ANZ Guam, Inc.*, 2020 MP 17

(citing 5A C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d § 1357 (1990))). We reiterated this in *Castro v. Hotel Nikko Saipan, Inc.*, in which the appellant argued that even if he failed to raise an issue in the trial court, leave to amend "should have been freely given." 4 NMI 268, 276 (1995). We considered the request "misplaced" because it was not made below. *Id.*; *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 749 (9th Cir. 2006) ("[W]e generally will not remand with instructions to grant leave to amend unless the plaintiff sought leave to amend below."); *Alaska v. United States*, 201 F.3d 1154, 1163–64 (9th Cir. 2000) ("Where a party does not ask the court for leave to amend, 'the request on appeal to remand with instructions to permit amendment comes too late.'").

¶ 23     Here, the Lizamas fail to demonstrate any attempt to obtain consent from ANZ to amend the complaint or that they moved to amend the complaint before or after the motion to dismiss. Absent those actions, the trial court cannot grant leave to amend and its failure to do so was not an abuse of discretion. It follows that we also cannot remand with instruction to grant leave to amend.

## V. CONCLUSION

¶ 24     For the foregoing reasons, we AFFIRM the Order of Dismissal.


SO ORDERED this 17th day of July, 2020.


/s/ _____
ALEXANDRO C. CASTRO
Chief Justice


/s/ _____
JOHN A. MANGLOÑA
Associate Justice


/s/ _____
PERRY B. INOS
Associate Justice


COUNSEL

Juan T. Lizama, Saipan, MP, for Plaintiffs-Appellants.

G. Patrick Civille, Hagatna, Guam, for Defendants-Appellees.