# EXHIBIT A




**COMMONWEALTH CASINO COMMISSION**
Commonwealth of the Northern Mariana Islands
P.O. Box 500237
Saipan, MP 96950
Tel: 1 (670) 233-1857/58
Fax: 1 (670) 233-1856
Email: info@cnmicasinocommission.com

Edward Manibusan
Attorney General
Michael Ernest F0317
Assistant Attorney General
Hon Juan A. Sablan Mem. Bldg., 2nd Floor
Capitol Hill
Caller Box 10007 Saipan, MP 96950
Tel: (670) 237-7500 Fax: (670) 664-2349



## BEFORE THE COMMONWEALTH CASINO COMMISSION

**ANDREW YEOM, in his official capacity as Executive Director (Acting) of the Commonwealth Casino Commission,**

Petitioner,

v.

**IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC**

Defendant.

DEI # 20-022(i)

COMPLAINT NO. 20-005

**COMPLAINT**

**COMES NOW**, the Plaintiff-Petitioner, Andrew Yeom, in his official capacity as Executive Director (Acting) (the "Executive Director") of the Commonwealth Casino Commission (the "CCC"), by and through undersigned counsel, and alleges as follows:

### JURISDICTION

1. The Commonwealth Casino Commission has jurisdiction over the Executive Director's claims pursuant to 4 CMC §2314(a) and §175-10.1-1501 et seq.

### PARTIES

2. Petitioner Andrew Yeom is the Executive Director (Acting) of the

Commonwealth Casino Commission "(CCC)".

3. Imperial Pacific International (CNMI) LLC is a corporation or otherwise limited liability company organized under the laws of the Commonwealth of the Northern Mariana Islands.

## FACTS

4. Imperial Pacific is required by Commonwealth law, the casino license agreement, and the regulations promulgated by the Commonwealth Casino Commission, to pay an annual regulatory fee.

5. Title 4 section 2309(a) reads:

"Casino Regulatory Fee. There is established a casino regulatory fee, which is an annual fee due on or before October 1 of each year beginning October 1, 2015. The casino regulatory fee is the only fee payable by the exclusive casino licensee to the Commission and will cover costs, including but not limited to, those associated with the licensing, testing, certification, auditing and approval of all casino slots and other gaming machines, casino table games and all other casino gaming activities conducted by the exclusive casino licensee at the licensed casino and regulated by the Commission as well as the costs of all applications, including their review, renewal and all related investigations, for licensing or permit or consent for casino employee licenses, casino key employee licenses. The casino regulatory fee is due regardless of actual costs incurred by the Commission."

6. Per Commonwealth law, the regulatory fee is due on or before October 1 of every year.

7. Respondent has paid this fee each year it has been required prior to 2020.

8. Per Commonwealth law, the regulatory fee for the year beginning October 1, 2020 through September 30, 2021 was due on or before October 1, 2020.

9. Title 4 section 2309(b) reads:

"Calculation of casino regulatory fee: The casino regulatory fee will be a flat fee at a fixed rate of $3 million annually with a five percent (5%) increase every five years for the following twenty years. After the twentieth year, the maximum Casino Regulatory Fee will be reached and maintained for the remaining duration until the end of the exclusive casino license term, including all extensions of the casino license."

10. Per Commonwealth law, the casino regulatory fee due on or before October 1, 2020 was at least 3 million dollars ($3,000,000).

11. Per Commonwealth law, the casino regulatory fee due on or before October 1, 2020 was Three Million One Hundred Fifty Dollars ($3,150,000.00).

12. On information and belief, the casino licensee did not pay the required casino regulatory fee in whole on or before October 1, 2020.

13. On information and belief, the casino licensee did not pay the required casino regulatory fee in part on or before October 1, 2020.

14. Per Section 17 of the casino license agreement, the casino licensee is contingent upon the licensee's "compliance with applicable laws, rules and regulations of the Commonwealth and the United States."

15. Section 2314 of Title Four of the Commonwealth Code lists some of the responsibilities of the Commonwealth Casino Commission.

16. One of the Commission's statutory responsibilities is to promulgate regulations which provide for "[s]upervision, monitoring and investigation or other means to ensure the suitability and compliance with the legal, statutory and contractual obligations of owners, operators, and employees of casinos and other persons licensed under" the gaming act.

17. Payment of the regulatory fee is a legal obligation of Imperial Pacific.

18. Imperial Pacific has a statutory obligation to pay the regulatory fee.

19. Imperial Pacific has a statutory obligation to pay the regulatory fee in full.

20. Imperial Pacific has a statutory obligation to pay the regulatory fee on the date it is due.

21. Imperial Pacific has a statutory obligation to pay the regulatory fee in full on the date it is due.

22. Imperial Pacific has a contractual obligation to pay the regulatory fee.

23. Imperial Pacific has a contractual obligation to pay the regulatory fee in full.

24. Imperial Pacific has a contractual obligation to pay the regulatory fee on the date it is due.

25. Imperial Pacific has a contractual obligation to pay the regulatory fee in full on the date it is due.

26. The Commission promulgated regulation §175-10.1-1225(b) which requires payment of the annual regulatory fee. It states:

"Calculation of casino regulatory fee: The casino regulatory fee will be a flat fee at a fixed rate of three million dollars annually with a 5% increase every five years for the following twenty years. After the twentieth year, the maximum casino

1  regulatory fee will be reached and maintained for the remaining duration until the end of the exclusive casino license term, including all extensions of the casino license."

27. In or about August, 2019, the then-Executive Director caused to be filed an action (19-001) for the untimely payment of the annual license fee.

28. The parties entered into a stipulated resolution of that enforcement action. In that stipulated resolution, IPI agreed that it would "ensure that all required fee payments are timely made as required by applicable Commonwealth law, regulation, or otherwise."

29. The stipulated agreement was confirmed by the Commission in a public meeting on or about September 26, 2019 in Commission Order 2019-004 which included the language "IT IS HEREBY FURTHER ORDERED that the casino licensee, shall ensure that all required fee payments are timely made as required by applicable Commonwealth laws, regulations, or otherwise." The Order was published in the Commonwealth Register on or about October 28, 2019 in Volume 41 Number 10 pages 042822-042823.

30. On information and belief, the regulatory fee was not paid in full for more than twelve hours from the time it was due. Also on information and belief, the regulatory fee has not been paid in full as of the filing of this Complaint.

**FIRST CLAIM**
**VIOLATION of 4 CMC 2309(b) BY RESPONDENT IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC PUNISHABLE BY §175-10.1-2540(c)**

31. Petitioner incorporates herein by reference paragraphs 1-30 as hereinabove alleged as if set forth here in full.

32. Imperial Pacific is the casino licensee for casino gaming in the Third Senatorial District contemplated by the gaming act.

33. Section 2309 of Title Four of the Commonwealth Code requires the holder of the license to pay the regulatory fee. It must be paid on or before October 1 of each year beginning October 1, 2015.

34. October 1, 2020 occurs chronologically after October 1, 2015.

35. Payment of the annual regulatory fee for the seventh was due on or before October 1, 2020.

36. Imperial Pacific failed to pay the required amount in full on or before October 1, 2020.

37. On information and belief, by failing to pay the regulatory fee when due, Imperial Pacific violated 4 CMC §2309.

38. The violation of a commonwealth statute is an offense which subjects the casino licensee to discipline pursuant to §175-10.1-2510(a).

39. The above actions and omissions which were, on information and belief, committed by Respondent Imperial Pacific International (CNMI) LLC are actions or inactions which are inimical to the public health, safety, morals, good order and general welfare of the people of the Commonwealth, or that would reflect or tend to reflect discredit upon the Commonwealth or the gaming industry, and the Commonwealth is damaged thereby.

40. The failure to timely pay the amount required by 4 CMC §2309 for more than twelve hours is a major violation of the Commission's regulations, 4 CMC §2540(c), and

1  should be penalized as a major violation. Each day the fee went unpaid is a separate
2  violation.

### SECOND CLAIM
### VIOLATION of §175-10.1-1225 BY RESPONDENT IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC PUNISHABLE BY §175-10.1-2540(c)

41. Petitioner incorporates herein by reference paragraphs 1-40 as hereinabove alleged as if set forth here in full.

42. Regulation §175-10.1-1225(b) reads:

"Calculation of casino regulatory fee: The casino regulatory fee will be a flat fee at a fixed rate of $3 million annually with a five percent (5%) increase every five years for the following twenty years. After the twentieth year, the maximum Casino Regulatory Fee will be reached and maintained for the remaining duration until the end of the exclusive casino license term, including all extensions of the casino license."

43. Regulation 1225(b) requires the licensee to pay the regulatory fee annually.

44. On information and belief, Imperial Pacific did not pay the required annual regulatory fee in full as of the filing of this Complaint.

45. On information and belief, by failing to pay the annual regulatory fee when due, Imperial Pacific violated §175-10.1-1225.

46. The violation of a regulation is an offense which subjects the casino licensee to discipline pursuant to §175-10.1-2510(a).

47. The above actions and omissions which were, on information and belief, committed by Respondent Imperial Pacific International (CNMI) LLC are actions or inactions which are inimical to the public health, safety, morals, good order and general

7

welfare of the people of the Commonwealth, or that would reflect or tend to reflect discredit upon the Commonwealth or the gaming industry, and the Commonwealth was damaged thereby.

48. The failure to timely pay the amount required by 4 CMC §2309 for more than twelve hours is a major violation of the Commission's regulations, 4 CMC §2540(c), and should be penalized as a major violation. Each day of nonpayment is a separate violation.

### THIRD CLAIM
### VIOLATION of §175-10.1-1805(b)(15) (BREACHING A CONTRACT) BY RESPONDENT IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC PUNISHABLE BY §175-10.1-1805(a) and §175-10.1-2510(a)

49. Plaintiff realleges and incorporates by reference paragraphs 1 through 48 of the Complaint as if alleged in full.

50. On information and belief, Respondent IPI entered into the Stipulated Agreement in Action 19-001 as a bargained for exchange of good and valuable consideration.

51. The Stipulated Agreement is a valid and enforceable agreement between IPI and the Executive Director; the Casino License Agreement is an enforceable agreement between IPI and the CNMI.

52. On information and belief, Defendant IPI has materially breached the terms of the Stipulated Agreement and the Casino License Agreement by failing to make required timely payment in full of the casino regulatory fee.

53. The Commonwealth has suffered damages as a result of Defendant IPI's breach of the Stipulated Agreement and the Casino License Agreement.

54. Regulation §175-10.1-1805(b)(15) states that "breaching any contract" is an unsuitable method of operation which is grounds for disciplinary action pursuant to Regulation §175-10.1-1805(a).

55. The Stipulated Agreement and the Casino License Agreement are each contracts as contemplated by Regulation §175-10.1-1805(b)(15).

56. Defendant IPI's material breach of the Stipulated Agreement and the Casino License Agreement constitutes breaches of a contract as those terms are used in Regulation §175-10.1-1805(b)(15), and the Commonwealth has been damaged because of IPI's material breaches of contract.

57. The actions described above violated §175-10.1-1805(b)(15).

58. The above actions which were, on information and belief, committed by Respondent Imperial Pacific International (CNMI) LLC are actions or inactions which are inimical to the public health, safety, morals, good order and general welfare of the people of the Commonwealth, or that would reflect or tend to reflect discredit upon the Commonwealth or the gaming industry, and the Commonwealth was damaged thereby.

**FOURTH CLAIM**
**DECLARATORY ORDER**

59. Petitioner incorporates herein by reference paragraphs 1-58 as hereinabove alleged as if set forth here in full.

60. Petitioner seeks an Order from the Commission declaring that IPI's failure to pay the casino regulatory fee in full when due amounts to an unsuitable method of operation per §175-10.1-1805(b)(15) or §175-10.1-1805(a), or otherwise, and requiring IPI to pay the casino regulatory fee immediately upon the effective date of the Commission's Order.

## SELF-REPORTING DETERMINATION

61. Petitioner incorporates herein by reference paragraphs 1-60 as hereinabove alleged as if set forth here in full.

62. Regulation §175-10.1-2530 is entitled "Self-reporting Determination". It reads: "The Commission, the Executive Director, or the hearing examiner, as the case may be, shall determine whether the licensee immediately, promptly or belatedly self-reported the offense (and the facts giving rise thereto) to the Commission, or whether the licensee failed to report the offense in a timely manner or at all."

63. On information and belief, Respondent Imperial Pacific International (CNMI) LLC did not immediately report the facts resulting in the above-alleged violations. IPI did notify the Commission that it would be unable to pay the fee when it was required; however, IPI did not affirmatively inform the CCC in writing after the date for payment had passed that it did not so pay as no such writing was received prior to the filing of this Complaint.

## DETERMINATION OF OFFENSE LEVEL

64. Petitioner incorporates herein by reference paragraphs 1-63 as hereinabove alleged as if set forth here in full.

65. The offense alleged in Count One of this Complaint is listed in §175-10.1-2540(c) such that a determination of offense level need not be made pursuant to §175-10.1-2535(a).

66. Petitioner Executive Director alleges that the violation alleged in Count One of this Complaint is a Major Offense pursuant to §175-10.1-2540 or otherwise.

67. The offense alleged in Count Two of this Complaint is listed in §175-10.1-2540(c) such that a determination of offense level need not be made pursuant to §175-10.1-2535(a).

68. Petitioner Executive Director alleges that the violation alleged in Count Two of this Complaint is a Major Offense pursuant to §175-10.1-2540(c).

69. For each offense not listed in §175-10.1-2540, the Commission, the Executive Director, or the hearing examiner, as the case may be, shall determine whether the offense should be penalized as a minor offense, an intermediate offense, or a major offense and impose the penalty permitted by § 175-10.1-2545.

70. On information and belief, the offense alleged in Claim Three is not listed in §175-10.1-2540.

71. Petitioner Executive Director alleges that the violation listed in Claim Three is a Major Offense.

72. In alleging that the violation listed in Claim Three is a Major Offense, the Executive Director considered the totality of the circumstances as he believed them to be, including but not limited to: whether the offense was an act of commission or omission; the self-reporting determination required by §175-10.1-2130; whether the licensee promptly accepted responsibility for the offense; whether the licensee has committed any previous offenses in the Commonwealth; whether the licensee has committed any previous offenses in any other jurisdiction; the relative harm suffered by the Commonwealth; the relative harm suffered by the gaming industry generally; and any other aggravating or mitigating factor deemed relevant.

73. The Executive Director considered the totality of the circumstances as he believed them to exist.

74. The Executive Director alleges that the violation in Claim Three was an act of omission.

75. The Executive Director alleges that the Respondent Imperial Pacific International (CNMI) LLC did not self-report the violation.

76. The Executive Director alleges that Respondent IPI has not accepted responsibility for the conduct underlying the offense.

77. The Executive Director does not allege IPI has previous violations of Commonwealth law which have been fully adjudicated, though the Executive Director alleges that the Commission is presently hearing other enforcement actions which allege various violations.

78. The Executive Director considered and alleges, on information and belief, aggravating factors that violating duties specifically required by law, regulation, and contract by a casino licensee is extremely deleterious to the image of gaming in the CNMI.

79. The Executive Director considered mitigating factors that IPI's business was harmed by the Coronavirus pandemic.

80. The Executive Director alleges the relative harm suffered by the Commonwealth to be great in that the public's confidence in general and the gaming public specifically, is greatly harmed when the licensee violates law and regulations, and breaches contracts.

81. The Executive Director alleges the relative harm suffered by the gaming industry generally to be minor to moderate.

82. The Executive Director did not consider and does not allege any other aggravating or mitigating factor to be relevant at this time, but alleges that the Commission is free to consider any other aggravating or mitigating factor it deems relevant.

## PENALTIES

83. Petitioner incorporates herein by reference paragraphs 1-82 as hereinabove alleged as if set forth here in full.

84. Each minor offense may be punished by: no punishment; a written warning; a fine not to exceed ten thousand dollars; and/or (in the case of a licensee not the casino operator) suspension of the license for a period not to exceed one month. Each intermediate offense may be punished by: a fine not to exceed twenty thousand dollars and/or (in the case of a licensee not the casino operator) suspension of the license for a period not to exceed six months.

85. Each major offense may be punished by: no punishment; a written warning; a fine not to exceed fifty thousand dollars; and/or (in the case of a licensee not the casino operator) suspension of the license for any period of time up to and including license revocation. The casino operator license may be suspended or modified at the discretion of the Commission upon a finding that one or more major offenses have occurred. The casino operator license may be terminated at the discretion of the Commission upon a finding that major offenses have repeatedly occurred.

86. The Executive Director alleges that the violations herein warrant a suspension of the casino license until such time as the regulatory fee is fully paid.

87. The Executive Director alleges that the violations herein also warrant a payment of $50,000 per violation per day the fee went unpaid for each of the violations alleged in Counts One and Two and Three.

## LEAVE TO AMEND

88. On information and belief, discovery in this matter may lead to new or previously unconsidered or discounted information which would require amendment of this Complaint. Accordingly, the Executive Director hereby requests and reserves the right to amend this Complaint as circumstances warrant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Executive Director requests the following:

A. That the Commission finds and declares that Respondent Imperial Pacific International (CNMI) LLC committed the violations alleged in this Complaint and that the Commission finds and declares that Respondent Imperial Pacific International (CNMI) did not immediately self-report to the Commonwealth Casino Commission the facts which gave rise to the violation(s) prior to being contacted by the Commission's enforcement staff, and the Commission grants the Declaratory relief requested in Count Four;

B. That the Commission declares that the violations committed by Respondent Imperial Pacific International (CNMI) LLC: in Counts One and Two and Three were major violations pursuant to CCC Regulation;

C. That the Commission finds, declares and Orders that Respondent Imperial Pacific International (CNMI) LLC's license to conduct gaming operations in the Third Senatorial District be suspended until such time as the annual casino regulatory fee

1 is paid in full;

2  D. That the Commission Orders Respondent Imperial Pacific International (CNMI) LLC to pay a fine of $50,000 per violation per day the regulatory fee went unpaid for the major violations alleged in Counts One and Two and Three.

E. Such other or further relief as the Commission may deem just and proper under the circumstances.

DATED this 6th day of October, 2020.

_____
Michael L. Ernest, F0317
Assistant Attorney General
Attorney for Andrew Yeom
Executive Director (Acting)