OFFICE OF THE ATTORNEY GENERAL
EDWARD MANIBUSAN
Attorney General
J. Robert Glass, Jr. (F0523)
Assistant Attorney General
Hon. Juan A. Sablan Memorial Bldg., 2nd Fl.
Caller Box 10007, Capital Hill
Saipan, MP 96950
Telephone: 670-237-7500
Email: robby_glass@cnmioag.org
Attorney for Defendant Commonwealth of the
Northern Mariana Islands

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC,<br>　　　　Plaintiff,<br>vs.<br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, the COMMONWEALTH CASINO COMMISSION, ARNOLD PALACIOS, GOVERNOR OF CNMI, in his official and personal capacities, et. al.,<br>　　　　Defendants. | CIVIL CASE NO. 1:24-CV-0002<br><br>**DEFENDANT COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS REPLY**<br><br>**Hearing Date:**<br>**Hearing Time:**<br>**Judge: Hon. Judge David Carter** |

Defendant Commonwealth of the Northern Mariana Islands, respectfully submits this REPLY in support of its motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

## I.   Background

On May 23, 2024, the Commonwealth of the Northern Mariana Islands filed its Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") as the initial motion to dismiss was directed at Plaintiff's Original Complaint. Plaintiff filed its Opposition, but noted that it would seek to file a Second Amended Complaint, which would moot the current round of briefing on the Motion to Dismiss the First Amended Complaint. Opp. at 10.[1] This continuing carousel of

---

[1] Plaintiff could just dismiss the portions of its FAC that it does not oppose being dismissed rather than filing an entirely new amended complaint that would moot the current motion and drive up the litigation costs and attorneys' fees it seeks to recover. Alternatively, this Court could rule on the unopposed portions of the Motion to Dismiss which would also make it unnecessary for any amendment to occur.

1

mooting Motions to Dismiss through Amending its Complaints is also pervasive in a related case. *See IPI v. Commonwealth, et. al.*, Case No. 1:24-sc-00001, which also had a First Amended Complaint filed to moot its round of Motions to Dismiss, and Plaintiff then sought leave to file a Second Amended Complaint to moot the motion to dismiss directed at the FAC. Each of these Amendments are brought by Plaintiff all the while arguing for attorneys' fees and litigation costs. *See* FAC at ¶¶ 50, 56, 65 and Prayer for Relief at ¶ 8 (ECF 26).

Nevertheless, the Commonwealth timely files its Reply to Plaintiff's Opposition to show that res judicata principles apply; that Plaintiff abandoned and clearly failed to raise its arguments in the NMI Superior Court and NMI Supreme Court; and that inherent sovereign immunity outside the Eleventh Amendment does apply to the Commonwealth for both claims arising under CNMI law and federal law.

## II.   Argument

**1. Res Judicata Bars Plaintiff's Suit.**

    **a. Plaintiff's "Bright Line" Facts Are Belied By Its FAC And Other Filed Arguments.**

Plaintiff admits that it did raise the issue of the constitutionality of the regulatory fee during its prior litigation. *See IPI v. Commonwealth, et. al.*, Civil Action No. 24-cv-0001 (N. Mar. I. May 17, 2024) (Opposition to Motion to Dismiss at 11 n. 7) (ECF 49) ("**IPI disputes that it did not raise the constitutionality of the $3M regulatory fee statue (sic) at the CCC suspension hearing…this defense was completely ignored by CCC.**"). This statement alone should bar them from further litigation on the matter of the constitutionality of the regulatory fee. As Plaintiff has conceded through its own admission that this point was previously raised, it should not be allowed to continue to take opposite positions in the present case.

But even beyond this plain admission in its companion case, Plaintiff argues facts in its Opposition which are belied by its First Amended Complaint. Plaintiff argues that the claims in its FAC accrued after the initial cases began and thus could not have been brought any earlier. Opp. at 5. However, its First Amended Complaint seeks relief not solely related to those narrow issues, but seeks to undo everything prior that has been litigated. *See* FAC at Prayer for Relief ¶¶ 3-5 (requesting declarations that statutes are unconstitutional, seeking restitution as to "all regulatory fees paid by IPI in the past," and to "vacate, nullify any and all adverse administrative decisions against IPI that were based upon the Regulatory Fee statute, including the imposition

of fees, interests and penalties for failure to pay the annual regulatory fees; as well as the suspension of its license based upon the annual regulatory fee statute. Including but not limited to Commission Order 2021-002"). Plaintiff cannot argue its claims only accrued after fully litigating its suspension, but then seek to undo that very suspension on the premise that the laws that were passed long before any litigation caused it to suffer a constitutional violation and breach of contract.

Plaintiff's FAC plainly argues that the passage of Public Laws 18-56 and 19-24 are the basis for its causes of action. FAC at ¶¶ 43-46 (ECF 26). These laws were passed well before any litigation occurred. FAC at ¶ 12 (PL 18-56 promulgated on July 11, 2014) and ¶ 24 (PL 19-24 promulgated on December 4, 2015) (ECF 26). It is the imposition of these laws that form the basis for every claim brought by Plaintiff. FAC at ¶¶ 43-46 (regulatory fee unconstitutionally impaired its contract rights); ¶ 53 (unlawful taking created by regulatory fee statute); and ¶¶ 60-61 (due process violation for imposition of regulatory fee statute); ¶ 69 (breach of CLA due to imposition of regulatory fee statute). Further, the FAC seeks to have the laws declared unconstitutional. FAC at ¶ 70 and Prayer for Relief ¶ 3 (ECF 26). Thus, to the extent it is seeking to have these laws declared unconstitutional, the actions giving rise to their claims occurred long ago. FAC at ¶¶ 24 (admitting to paying the regulatory fee from 2015-2019). Plaintiff could and should have raised and pursued the argument that the regulatory fee statute was being unconstitutionally applied to Plaintiff. *See Brown v. Felsen*, 442 U.S. 127, 131 (1979) (citation omitted) ("Res judicata prevents litigation of all grounds for, or defenses to, recovery **that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding**.") (emphasis added). Plaintiff has admitted that it did raise the issue, then it abandoned it on its appeals to the Superior and Supreme Court of the Northern Mariana Islands. Plaintiff did not continue to raise the issue as it sought review of the decision of the CCC. To the extent Plaintiff did raise the issue as it admits, the issue clearly accrued and was available for litigation. To the extent Plaintiff did not raise the issue, it should have as the issue was ripe for adjudication.

While Plaintiff argues that the current litigation did not accrue until after the prior litigation, Plaintiff is wrong. Opp. at 5-6. The Ninth Circuit does have a bright line test. *See Flores v. Life Insurance Company of North America*, No. 22-55779 2024 WL 222265 (9th Cir.

Jan. 22, 2024).[2] In making this statement for a bright-line rule, the Ninth Circuit first acknowledges that res judicata does not apply if the claim could have been brought in the previous action. *See id.* (citing *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011)) ("Importantly, in most res judicata cases, the inquiry about the same transactional nucleus of facts is the same inquiry as whether the claim could have been brought in the previous action.") (cleaned up). In other words, if the present claims were previously available to Plaintiff, then they are barred by res judicata. However, as was clearly shown above, Plaintiff is not just seeking declarations and determinations as to whether or not the regulatory fee was constitutional as applied during the time of its license suspension. Plaintiff clearly seeks a determination of the constitutionality of the statute as a whole as applied to Plaintiff and seeks recovery of all funds ever paid for the regulatory fee. *See* FAC at ¶ 44 ("The regulatory fee statute as applied to IPI during the Covid-19 period… is unconstitutional impairment of its contractual right under the force majeure clause within the CLA"); ¶ 47 ("The impairment to the CLA by demanding immediate payment for [the] annual regulatory fee accrued during the force majeure event is substantial"); ¶ 53 ("[D]espite the CLA already expressly providing for an annual license fee and no such regulatory fee, even for the period when IPI was legally prohibited from operating the casino during the pandemic and when its license was suspended."); ¶ 54 ("**By the enactment and implementation of the regulatory fee statute**, the issuance of Commission Order 2021-002, Defendants are thereby permanently, directly and substantially interfering with IPI's use and enjoyment of its contractual and property rights (the casino license), amounting to an unauthorized taking of its casino license without just compensation.") (emphasis added); ¶ 60 ("Acting under color of law, **by the enactment and implementation of the regulatory fee statute**, the issuance of Commission Order 2021-002, and the most recent demand for immediate payment by Defendants, Defendants have caused IPI to suffer a deprivation of its federal and commonwealth constitutional rights.") (emphasis added); ¶ 63 ("The recent demand by Defendants upon IPI to pay for over $6M regulatory fees allegedly accrued during the force majeure period by Defendant is arbitrary, capricious and unreasonable."); ¶ 68 ("Actual controversies have arisen between IPI and Defendants with regard

---

[2] The Commonwealth recognizes this is an unpublished, non-precedential decision from the Ninth Circuit, but cites to it because it is the primary case Plaintiff uses to make its wrongful assertions. *See* Ninth Circuit Rule 36-3.

to whether the annual regulatory fee imposed by Defendants **as a prerequisite for IPI to operate its business** violate the terms of the CLA.") (emphasis added); ¶ 70 (arguing "that the imposition of the annual regulatory fee is in contravention of the CLA"; that IPI is either exempt from or not subject to the annual regulatory fee because of the pre-existing agreement with CNMI; "that the annual regulatory fee statute as applied to IPI is unconstitutional"[3]; and that "the demand for immediate payment of over $6M regulatory fee accrued during the force majeure event is a breach of the CLA force majeure clause and unconstitutional"); Prayer for Relief at ¶¶ 3-4 (seeking a declaration that "the demand for immediate payment of over $6M regulatory fee accrued during the force majeure event is a breach of the CLA force majeure clause and unconstitutional" and "**for the Court to order Defendants to pay restitution of all regulatory fees paid by IPI in the past**") (emphasis added).

What is abundantly clear from its FAC is that Plaintiff's claims did not only arise during the period of suspension. Plaintiff seeks declarations and recovery for events that only happened prior to the period of suspension. In fact, what is obvious is that Plaintiff could have argued previously that the regulatory fee unconstitutionally impaired its rights under the CLA when it first paid the fee in 2015 (Cause of Action I); Plaintiff could have argued previously that paying the regulatory fee was an unlawful taking when it paid it in 2015 (Cause of Action II); Plaintiff's due process rights regarding the enactment and implementation of the regulatory fee accrued when the statute was enacted and implemented and it first paid it in 2015 and further when the statute was used to suspend their license (Cause of Action III); if there was any breach of the CLA, it happened when the statute was enacted and implemented in 2015 and Plaintiff first paid the Regulatory Fee and when the statute was used as the basis of a violation to suspend their license (Cause of Action IV). In addition, its causes of action accrued[4] and could have been litigated as applied to Plaintiff when its license was suspended and it appealed that suspension all the way to the NMI Supreme Court. Plaintiff's arguments to the contrary are unpersuasive and belied by their own FAC.

---

[3] Notably, this paragraph does not state "only during the time of suspension," rather it seeks an outright declaration that the statute has always been unconstitutional.

[4] "Accrue" means "to come into existence or arise." *See Media Rights Technology, Inc. v. Microsoft Corportation*, 922 F.3d 1014, 1021 (9th Cir. 2019) (citing Black's Law Dictionary (10th ed. 2014)).

### b. The Claims Are The Same And Could Have Been Raised Prior.

Plaintiff next argues that:

> [A] further reason why res judicata does not apply is because the claims in this action are necessarily different than any sort of claims that could have been asserted in the earlier litigation as they concern the IPI's obligation to pay the regulatory fees during the time when its license was suspended as opposed to whether IPI's obligation to pay the regulatory fees during force majeure period, and center on different sets of facts.

Opp. at 6. As already shown above, Plaintiff's argument that it is only seeking determinations regarding the slim period of time when its license was suspended is misleading. *See* FAC ¶ 44 ("The regulatory fee statute as applied to IPI during the Covid-19 period…is unconstitutional impairment of its contractual right under the force majeure clause within the CLA."); ¶ 47 ("The impairment to the CLA by demanding immediate payment for annual regulatory fee accrued during the force majeure event is substantial."). Plaintiff cannot take both positions (that it seeks a declaration that the regulatory fee statute is unconstitutional from its inception and that Plaintiff should be reimbursed for all fees paid since 2015, but also claim it is only seeking declaration for the time period of its license suspension). This inconsistent position shows that Plaintiff understands the claims are the same, which is why it seeks a declaration that the statute has always been unconstitutional and for full reimbursement and the overturning of all prior litigation.

Regardless of Plaintiff's inconsistent positions, even if it were only seeking declaration for the period of license suspension, res judicata would still apply because as shown above, the action itself accrued prior to the initial litigation and could have been raised in the prior proceedings. *See Liquidators of European Fed. Credit Bank,* 630 F.3d at 1151 (9th Cir. 2011) ("Importantly, in most res judicata cases, the inquiry about the same transactional nucleus of facts is the same inquiry as whether the claim could have been brought in the previous action.").

### c. Plaintiff Misconstrues Res Judicata As To Administrative Adjudications.

Plaintiff argues that res judicata does not apply to administrative decisions by citing to *In re Estate of Ogumoro*, 4 NMI 124, 127 (1994). Opp. at 7-8. Plaintiff misconstrues the case and its holding. *Estate of Ogumoro* dealt with a probate proceeding where there was a contested issue of a title determination of a parcel of land where the sole decision was done by the Land Commission. Factually, the case is distinguishable because the only determination was made by an agency — the Land Commission — and the decision was not further contested. In this case, the CCC made

a determination which was at a contested hearing and then litigated to the NMI Superior Court and NMI Supreme Court. On this factual distinction alone, Plaintiff's reliance on *Estate of Ogumoro* is misplaced because this case it is not applying res judicata to an agency decision, but to judicial determinations made by the NMI Superior Court and the NMI Supreme Court. This is especially true as the NMI Supreme Court's determinations were done as part of a de novo review of the agency's actions. *See Commonwealth Casino Commission v. Imperial Pacific International (CNMI), LLC*, 2023 MP 8 ¶ 15.

But even if the standard were "fairness and equity," Plaintiff received every chance to raise its claims and litigate them in their prior proceedings. It chose not to do so.[5] Even more troublesome, Plaintiff argues it both ways in its concurrent litigation: at one point arguing that it could not have raised the issues it now seeks to adjudicate, while simultaneously arguing that it did raise them but they were ignored. *See IPI v. Commonwealth, et. al.*, Civil Action No. 24-cv-0001 (N. Mar. I. May 17, 2024) (Opposition to Motion to Dismiss at 11 n. 7) (ECF 49) ("IPI disputes that it did not raise the constitutionality of the $3M regulatory fee statue (sic) at the CCC suspension hearing…this defense was completely ignored by CCC"). Again, Plaintiff cannot keep its positions consistent, and thus should be estopped from espousing contrary positions as it suits them to make various arguments in companion cases.

**2. Plaintiff Failed To Address Collateral Estoppel.**

Plaintiff failed to address or oppose the Commonwealth's collateral estoppel arguments. Due to its failure to address the argument, the Court should find the arguments well taken and meritorious. *See* Local Rule 7.1(c)(2). Thus, the Court should grant the motion to dismiss as Plaintiff has waived any arguments in opposition by failing to address the motion.

**3. The CNMI Has Common Law Sovereign Immunity.**

Plaintiff concedes that the CNMI has sovereign immunity over claims arising under its own laws. Opp. at 10. Thus, its claims in the First Cause of Action under the CNMI Constitution, its Third Cause of Action under the CNMI Constitution, and its Fourth Cause of action for breach of contract under the CLA must all be dismissed.

As to the remaining causes of action (First, Second, and Third Causes of Action under the federal constitution), the CNMI has common law sovereign immunity and thus cannot be

---

[5] Again, to the extent Plaintiff has already admitted, it did raise the issue of the constitutionality of the Regulatory Fee in the prior litigation, but then abandoned the issue on its judicial review and appeals.

subjected to suit. The CNMI is the only place with United States jurisdiction that has been disallowed sovereign immunity based on common law sovereign immunity. This should change as not only is *Fleming* on shaky ground, but the primary issue has been ignored by the Courts.[6]

While *Fleming v. Department of Public Safety*, 837 F.2d 401 (9th Cir. 1988), clearly decided that the Eleventh Amendment immunity did not apply to the CNMI due to the Amendment's omission from the Covenant, its holding that common law sovereign immunity was waived by "implication" is on tenuous grounds.[7] The *Fleming* holding that the CNMI does not enjoy common law sovereign immunity was expressly passed over by the Ninth Circuit because that Court held the waiver of sovereign immunity pursuant to the Covenant was broad:

> The Department also claims that the Commonwealth enjoys common law sovereign immunity, and that Fleming's suit is barred even if the eleventh amendment is not applicable. The Department cites *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), for the proposition that common law sovereign immunity constitutes an independent limitation on courts' Article III jurisdiction to hear cases against states. We do not reach this question, because we conclude that in entering into the Covenant the Commonwealth impliedly waived whatever immunity it might otherwise have enjoyed against suits in federal court arising under federal law.

*Id*. at 407 (emphasis added). From this it is clear that two types of sovereign immunity exist: common law sovereign immunity and eleventh amendment sovereign immunity. *Fleming*'s rationale is that by entering into the Covenant, the CNMI waived both because "**there is simply no meaningful distinction between eleventh amendment immunity and common law sovereign immunity insofar as federal suits are concerned**." *Id*. (emphasis added). *Fleming* never gets to the question of the Commonwealth's common law sovereign immunity because it finds there to be no distinction. It is this basis that provides the crack under which *Fleming*'s rationale and reasoning can no longer be reconciled with further developments. *See Manila v. Department of Corrections*, 2019 WL 324424 at *3 (D. N. Mar. Is. Jan. 24, 2019) (basing its decision on *Fleming* not being "clearly irreconcilable with the reasoning or theory of intervening higher authority").

---

[6] ABA Model Rule 3.1 allows for attorneys to argue in good faith for "extension, modification, or reversal of existing law."

[7] *Fleming*'s other primary holding that the CNMI was a "person" under § 1983 has already been overturned. *See Norita v. Northern Mariana Islands*, 331 F.3d 690, 696 (9th Cir. 2003).

*Alden v. Maine*, 527 U.S. 706 (1999), provides the hammer to the crack, which shows that eleventh amendment immunity and common law sovereign immunity are not indistinguishable (as the *Fleming* court found) and thus this Court should find *Alden* irreconcilable with *Fleming*. *Alden* specifically finds that there is immunity outside of the eleventh amendment:

> We have, as a result, sometimes referred to the States' immunity from suit as "Eleventh Amendment immunity." The phrase is convenient shorthand but something of a misnomer, for **the sovereign immunity of the States neither derives from, nor is limited by**, the terms of the Eleventh Amendment.

*Alden*, 527 U.S. at 713 (emphasis added). This is a clear admission that there is a clear distinction between Eleventh Amendment immunity and common law immunity. *Id.* When this Court examined the issue in *Manila*, it did not examine this portion of *Alden* or explain why it is not irreconcilable. Instead, the Court relied on *Norita v. Northern Mariana Islands*, 331 F.3d 690 (9th Cir. 2003) to find that *Alden* was not irreconcilable with *Fleming*. However, *Norita*, carefully avoids the problem presented by *Alden* and sidesteps the issue.

*Norita* pays homage to *Alden* and its holding that sovereign immunity is derived not from the eleventh amendment, but by the inherent sovereign immunity of being a sovereign (*i.e.*, common law sovereign immunity). However, when push comes to shove, *Norita* explicitly skips *Alden,* reasoning that "[t]he principles CNMI relies on from the Supreme Court's recently clarified Eleventh Amendment jurisprudence in support of its assertion of sovereign immunity here predate *Fleming*." The *Norita* court then lists out three cases which do predate *Fleming*: *Hans v. Lousisana*, 134 U.S. 1 (1980); *Principality of Monaco v. Mississippi*, 292 U.S. 313 (1934); and *Edelman v. Jordan*, 415 U.S. 651 (1974). Conspicuously absent is the 1999 case of *Alden v. Maine*, 527 U.S. 706 (1999). *Fleming* was decided in 1988 and *Alden* in 1999, so it is not clear why the Ninth Circuit did not discuss it. Further complicating the matter, the *Norita* court separates the issue of eleventh amendment and common law sovereign immunity and states: "We have found no closely-on-point intervening Supreme Court decision undermining *Fleming's* holding that the CNMI is not entitled to an Eleventh Amendment defense." *Norita*, 331 F.3d at 696. This is definitely true. But *Alden* again undermines this by finding that sovereign immunity exists as an inherent status outside of the eleventh amendment. If that is not enough, another 1999 case also finds "that a waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." *Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261

9

(1999). The failure to include the eleventh amendment in the Covenant would only function to waive Eleventh Amendment immunity and not common law immunity, because the waiver is specific and should be strictly construed in favor of the sovereign.

Thus, the decisions in *Fleming* and *Norita* continue to build upon one another, but start with a shaky foundation that proclaims there is no distinction between eleventh amendment and common law sovereign immunity, and then fail to analyze *Alden*'s holding that there is a distinction and to apply *Department of Army*'s holding that makes any waiver be strictly construed in terms of its scope to favor the sovereign. The shaky walls are then built by ignoring Supreme Court precedent which was decided after *Fleming* and clearly makes the part of *Fleming* holding that there is no distinguishing between eleventh amendment sovereign immunity and common law sovereign immunity irreconcilable with that later precedent. It is time to bring the Commonwealth into alignment with the other United States jurisdictions and find that the Commonwealth has common law sovereign immunity; the holding of *Fleming* (that the CNMI does not have common law sovereign immunity because eleventh amendment and common law sovereign immunity are not distinguishable) cannot be reconciled with *Alden* any longer.

### III.   CONCLUSION

For the foregoing reasons, Defendants respectfully moves to dismiss this suit pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

Respectfully submitted,

          OFFICE OF THE ATTORNEY GENERAL
          EDWARD MANIBUSAN
          Attorney General

Date:  June 10, 2024        /s/ *J. Robert Glass, Jr.*
          J. Robert Glass, Jr. (F0523)
          Chief Solicitor
          Attorney for Defendant
          Commonwealth of the Northern Mariana Islands