Stephen J. Nutting
Law Office of Stephen J. Nutting
6th Floor Marianas Business Plaza
P.O. Box 5093 Saipan, MP 96950
Michael Chen
Michael Chen Law Offices
7330 Edna Ave.
Las Vegas, NV 89117
(*Pro Hac Vice*)

Attorneys for Plaintiffs IPI (CNMI) LLC and Best Sunshine International (BVI) Ltd.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| Imperial Pacific International (CNMI) LLC, Best Sunshine International (BVI) Ltd.;<br><br>Plaintiffs,<br><br>vs.<br><br>Commonwealth of the Northern Mariana Islands, et. al.<br><br>Defendants. | CASE NO. 1:24-cv-00002<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS COMMONWEALTH CASINO COMMISSION, EDWARD C. DELEON GUERRERO, RAFAEL S. DEMAPAN, AND MARIANO TAITANO'S MOTION TO DISMISS**<br><br>**Hearing Date:**<br>**Time:**<br>**Judge: Hon. David O. Carter** |

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Imperial Pacific International (CNMI) LLC, ("IPI") and Best Sunshine International (BVI) Ltd. hereby oppose the Motion to Dismiss (ECF No. 35) filed by Defendants Commonwealth Casino Commission ("CCC"), Edward C. Deleon Guerrero, Rafael S. Demapan, And Mariano Taitano (collectively referred to as "Commissioners").

I. INTRODUCTION

In its First Amended Complaint, (ECF No. 26), which is the current operative pleading, Plaintiff alleged four causes of actions: 1. Violation of the contracts clauses of the U.S. and CNMI constitutions, 2. Violation of the taking clauses of the U.S. Constitution, 3. Violation of the Due Process Clause of U.S. and CNMI Constitutions, and 4. Breach of the Casino License Agreement. Plaintiffs sought declaratory, injunctive and equitable relieves.

Defendants CCC and its Commissioners moved to dismiss the Complaint pursuant to Rules 12 (b) (1). Defendants argues that the Complaint should be dismissed under Rule 12(b)(1) under *District of Columbia Court of Appeals v. Feldman*, 460 U.S. (1983) because the FAC is a de facto appeal of the decision made by the Supreme Court of the Commonwealth in case 2022-SCC-0006-CIV. Defendants also argues that Plaintiffs have no standing to file the FAC.

Defendants' argument as to the application of the *Feldman* Doctrine must fail because

a. The *Feldman* case grants federal district courts subject matter jurisdiction over complaints mounting a general challenge to the constitutionality of the underlying state (commonwealth) statutes, which is exactly what the FAC does.
b. The majority of the constitutional claims brought in this action arose after the earlier litigation, so the *Feldman* doctrine has no application to the majority of the cause of actions raised in the FAC.
c. Granting the reliefs requested in the FAC would not reverse the decision made by Commonwealth Supreme Court and would not void its ruling.

Defendants' argument as to lack of standing by Plaintiffs has no factual basis. FAC has sufficiently pleaded all factual elements to support the finding of standing of Plaintiffs.

Defendants CCC's Commissioners defaulted by their failure to file a timely responsive pleading. There is a pending motion for entry of default against the Commissioners. (ECF No. 33). The defaulting defendants offered no justifications for their untimely responsive pleading, and their motion to dismiss shall be denied on this ground alone.

## FACTUAL BACKGROUND

As alleged in the FAC: On or about August 12, 2014, IPI entered into a Casino License Agreement (CLA) with the Governor and the Commonwealth Lottery Commission. Under CLA, among other obligations, IPI would pay a fifteen million dollar annual Casino License Fee. IPI paid the annual license fee each year between 2014 and 2019.

On December 4, 2015, CNMI promulgated Public Law 19-24, which imposes a new obligation on IPI to pay CCC an annual "Casino Regulatory Fee" of three million dollars on or before October 1 of each year beginning October 1, 2015 ("Regulatory Fee Statute").

The Regulatory Fee is due to CCC "regardless of the actual costs incurred by the [CCC]." 4 C.M.C. Section 2309 (a). IPI paid the Casino Regulatory Fee each year from 2015 through 2019.

Before Public Law 19-24 was signed by then Acting Governor, Ralph DLG. Torres, the CNMI legislature's statutory language provided for a "Nonrefundable Credit" to the Regulatory Fee such that IPI could apply the $3 million Regulatory Fee to CCC as a credit against taxes on general revenue as imposed by 4 C.MC. Section 1301. However, the Acting Governor vetoed the provision of "Nonrefundable Credit" with the stated reason that, "the cost of regulating casino gaming activities on Saipan are to be paid in full by the licensee."

Due to the onset of the Covid-19 pandemic and the government mandated shutting of the casino and all travel to Saipan, IPI was unable to make its October 1, 2020, Regulatory Fee payment. The Commission commenced several enforcement actions, including Complaint No. 20-005 with regard to IPI's failure to pay the Regulatory Fee on October 6, 2020. See **Exhibit A.** (Plaintiff requests the court to take judicial notice of Exhibit A under Rule 201 of the Federal Rules of Evidence

In response to Complaint No. 20-005, IPI asserted in its affirmative defenses that the Regulatory Fee is unconstitutional, including for the reasons that it is an unlawful taxation disguised as a fee, it deprives IPI of property without due process and is arbitrary and excessive, it violates IPI's right to equal protection, and it is an unconstitutional executive

impoundment of funds. See **Exhibit B ¶¶ H, I, J, and K.** (Plaintiff requests the court to take judicial notice of Exhibit B under Rule 201 of the Federal Rules of Evidence

Following what are claimed to have been "evidentiary hearings," on March 2, 2021, the Commission issued Order 2021-002 on April 22, 2021. With respect to Complaint No. 20-005, the Order contains one, short, conclusory paragraph simply finding that IPI "offered no defense" to the claims and thus violated the Regulatory Fee requirements. See **Exhibit C ¶17.** (Plaintiff requests the court to take judicial notice of Exhibit C under Rule 201 of the Federal Rules of Evidence.

The Order overlooks IPI's affirmative defenses related to its constitutional challenge to the Regulatory Fee, and offers no analysis or finding on these constitutional claims. There are two signatories to the Order: CCC Chairman Edward C. Deleon Guerrero and Defendant Demapan. ECF No. 1-3 at 6. The Chairman is a signatory as to Enforcement Action 2020-003 (consolidated). ECF No. 1-3 at 6. Defendant Demapan is a signatory as to Enforcement Action 2020-001 (consolidated). Defendant Taitano voted for Commission Order.

On March 15, 2022, the Superior Court for the Commonwealth of the Northern Mariana Islands issued its order affirming the Commission Order. See **Exhibit D.** (Plaintiffs request the court to take judicial notice of Exhibit D under Rule 201 of the Federal Rules of Evidence. As the constitutional issues were clearly not within the scope of the underlying Commission Order, the court ruling similarly does not address any of the constitutional concerns raised in IPI's initial affirmative defense before the Commission. The Superior Court's decision was appealed to CNMI Supreme Court with Case No. 2022-SCC-0006-CIV.

Likewise, the Commonwealth Supreme Court's Order issued on August 25, 2023, for case 2022-SCC-0006-CIV. Its decision primarily addresses the *force majeure* issue, and does not address any such constitutional arguments. See **Exhibit E.** (Plaintiffs request the court to take judicial notice of Exhibit E under Rule 201 of the Federal Rules of Evidence.

Notably, however, the CNMI Supreme Court affirmed in part, reversed in part, and remanded the matter back to the Commission for further proceedings consistent with the

opinion. CNMI Supreme Court specifically asked CCC to decide on a reasonable deadline for IPI to pay the annal license fee.

Since the issuance of the Opinion by CNMI Supreme Court, it has been the positions of CCC that one month is a reasonable deadline for IPI to make the overdue annual license fees; and IPI is liable for the annual regulatory fee under the annual regulatory fee statute during the period when its casino license was suspended since April 22, 2021, together with fees and penalties, the regulatory fee allegedly owed to CCC is over $10M USD.

## II.   MOTION TO DISMISS LEGAL STANDARD

In the 9th Circuit, when a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, no presumption of truthfulness attaches to the plaintiff's allegations for the purpose of determining jurisdiction. The district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *Hedrington v. David Grant Med. Ctr.*, 2023 U.S. Dist. LEXIS 145404. The party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over his or her claims. *Thielman v. Kotek*, 2024 U.S. Dist. LEXIS 93238, *Miller v. Burrow*, 2024 U.S. Dist. LEXIS 89630.

## III.   LEGAL ARGUMENT

**A.   The Feldman Doctrine does not deprive the district court of subject matter jurisdiction to hear claims raised in the FAC.**

**i.   The Feldman Doctrine specifically grants subject matter jurisdiction to federal district court for general attack on the constitutionality of the underlying state statute.**

The *Feldman* Doctrine, also known as the *Rooker-Feldman* Doctrine.[1]  The Rooker-Feldman doctrine instructs that federal district courts are without jurisdiction to hear direct

---

[1] The doctrine was established by two cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); *Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983).

appeals from the judgments of state courts. Congress, in 28 U.S.C. § 1257, vests the United States Supreme Court, not the lower federal courts, with appellate jurisdiction over state court judgments. *Lance v. Dennis*, 546 U.S. 459, 463, 126 S. Ct. 1198, 163 L. Ed. 2d 1059 (2006) (per curiam). Accordingly, "[r]eview of such judgments may be had only in [the Supreme] Court." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). The doctrine bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over the "de facto equivalent" of such an appeal. *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003).

This doctrine is grounded in the principle that federal district courts, as courts of original jurisdiction, do not have the authority to review the final determinations of a state court in judicial proceedings. However, the doctrine does not bar all claims that have been previously litigated in state court. If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction. See *Bartko v. Earles*, 2024 U.S. App. LEXIS 14790. This includes general constitutional challenges to state statutes, which do not require review of a final state court judgment in a particular case., see *Feldman* at 483, see also *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602.

The *Feldman* Doctrine grants federal district courts subject matter jurisdiction over general constitutional challenges to state statutes. However, it does not extend this jurisdiction to challenges that are inextricably intertwined with state court judgments in specific case. See *Bartko v. Earles*, 2024 U.S. App. LEXIS 14790, *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602.

A claim is considered inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it, or if the relief requested in the federal action would effectively reverse the state court

decision or void its ruling. See *Keene Corp. v. Cass*, 908 F.2d 293, *Neal v. Wilson*, 920 F. Supp. 976.

In Summary, the *Rooker-Feldman* Doctrine allows federal district courts to exercise jurisdiction over general constitutional challenges to state statutes, but not over challenges that are inextricably intertwined with state court judgments in specific case.

The FAC challenges the constitutionality of the underlying statue that gives CCC the authority to collect the annual casino regulatory fees accrued during the periods when IPI was shut down due to force majeure events and when IPI's casino license was suspended. [2] By the application of the exception explicitly provided for by the *Feldman* doctrine, the district court has original subject matter jurisdiction to hear the claims raised in the FAC.

**ii.     The majority of the claims raised by the FAC were not before the CNMI Supreme Court when it rendered its decision in August 2023.**

There are three distinct categories of claims raised by plaintiffs in the FAC:

1. Demand by CCC to pay the annual regulatory fee during the force majeure period, which allegedly violates the contract clause, taking clause, due process clause of the U.S. and CNMI constitutions, and breaches the CLA.

2. Demand by CCC to pay the overdue annual regulatory fees accrued during the force majeure period within one month, which allegedly violates the contract clause, taking clause, due process clause of the U.S. and CNMI constitutions, and breaches the CLA.

3. Demand by CCC to pay the overdue annual regulatory fees accrued during the period when IPI's casino license was suspended, which allegedly violates the contract clause, taking clause, due process clause of the U.S. and CNMI constitutions, and breaches the CLA.

---

[2] The two periods had some overlaps.

It is clear that the second and third category of claims were not before the CNMI Supreme Court when it adjudicated case 2022-SCC-0006-CIV. These two claims arising from events after CNMI Supreme Court rendered its decision in case 2022-SCC-0006-CIV, which confirms that force majeure events would not excuse the payment of the annual license fees, but it would only delay the payment for a reasonable period of time. The issue whether IPI was obligated to make the annual regulatory fee payment during the periods when its license was suspended was not addressed in case 2022-SCC-0006-CIV because CNMI Supreme Court just had the chance to confirm the legitimacy of the suspension order.

For the first category of claims, CNMI Supreme Court did not address any of the constitutional challenges as raised in the FAC, CNMI Supreme Court merely confirms that CCC's order was not arbitrary or capricious and did not violate IPI's procedural due process rights within a very limited scope. As argued by co-defendant in this action, i.e., CNMI government, IPI could and should have raised the same claims in the earlier state court proceedings, but that argument is a *res judicata* argument, it may or may not bar IPI from raising the claims here; nevertheless, it does not change the fact that the constitutional challenges raised in the FAC was not addressed by CNMI Supreme Court; and there is no final state judgment for the purpose of the application of the *Feldman* doctrine as far as the first category of claim is concerned.

### iii. **Granting some of the requested reliefs would not reverse or void the CNMI Supreme Court's decision.**

Plaintiffs agree with Defendants that, if all of the requested reliefs were granted by this court, it would have the effect of reversing or voiding certain aspects of the CNMI Supreme Court's decision in case 2022-SCC-0006-CIV. For example, a sweeping and unqualified declaration that the annual regulatory fee statute as unconstitutional would have the net effect of reversing the decision made by CNMI Supreme Court in case 2022-SCC-0006-CIV with respect to Complaint 005, so does a restitution of all annual regulatory fees paid in the past.

The decision made by CNMI Supreme Court in case 2022-SCC-0006-CIV stands for the proposition that force majeure events does not excuse the performance by IPI to make the annual license fee payment. CNMI Supreme Court held that "[t]he Annual License Fees for 2020 and the following years have accrued and continue to accrue, and CCC must now decide on a reasonable deadline for IPI to pay them." In contrast, CNMI Supreme Court was silent on whether the annual regulatory fees have also accrued and continue to accrue, it merely sanctioned the suspension order made by CCC due to the non-payment of 2020 regulatory fee as alleged in Complaint 005.

At its best, the CNMI Supreme Court decision in case 2022-SCC-0006-CIV may have implicitly upheld the constitutionality of the annual regulatory fee statute generally. However, the decision does not address the issue whether the application of the annual regulatory fee statute may be unconstitutional in some circumstances, such as when the subject license is suspended by CCC. In addition, the decision does not answer the question whether the "double jeopardy" where the penalties for missing the annual regulatory fee payment in any given year include both suspension of the license and the accrual of a debt owed to CCC is sanctioned by the regulatory fee statue and applicable constitutional provisions.

This court may grant some reliefs requested in the FAC without reversing or voiding the decision made by CNMI Supreme Court, for example, declaring the demand by CCC for regulatory fees when IPI's license was suspended as unconstitutional, declaring the demand by CCC for immediate payment of all alleged past due regulatory fee as unreasonable, and declaring the "double jeopardy" as advocated by CCC as unconstitutional.

Plaintiffs would ask the court for leave to amend and narrow the requested reliefs in the FAC accordingly.

**B. Plaintiffs has standing to bring the FAC before this Court**

    **i. <u>Plaintiffs suffered an injury.</u>**

As alleged in the FAC, IPI was unable to lift the suspension of its casino license without making $17,625,000.00 payment to CCC related to the regulatory fees, a large portion

of which were allegedly owed to CCC during the period when its casino license was suspended. The inability of IPI to resume its business is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." See *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), as revised (May 24, 2016).

### ii. The injury suffered by Plaintiffs are caused by the conducts of the Defendants as complained in the FAC.

As alleged in the FAC, the injury, i.e. the inability to reopen its casino, is directly caused by the demand of immediate payment and the position maintained by CCC that IPI owes $17,625,000.00 payment to CCC. The alleged injury can be "fairly traceable to the "complained-of conduct of the defendant." See *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 102–04 (1998)

### iii. The injury can be redressed by granting of the requested reliefs.

By granting some of the requested reliefs, such as declaring the annual regulatory fee statute as applied to IPI during the period when IPI's license was suspended would certainly address the injury suffered by IPI. As argued earlier, this Court may grant such reliefs without necessarily reversing and/or voiding the judgment by CNMI Supreme Court.

### IV. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion to Dismiss be denied in its entirety.

Dated: June 24, 2024
Saipan, CNMI

Respectfully submitted,

By:/s/ Stephen Nutting
Stephen Nutting

Michael Chen
By: /s/ Michael Chen
*Pro Hac Vice*
Attorneys for Plaintiffs